IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

———————————————

No. 23-2543

KAYLA SMILEY,

Plaintiff/Appellant,

v.

DR. KATIE JENNER, *in her official capacity,*

Defendant/Appellee.

———————————————

On Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division
No. 1:23-cv-1001-JPH-MKK
The Honorable James P. Hanlon, Judge

**REPLY BRIEF OF APPELLANT**

———————————————

Stevie J. Pactor
*Counsel of Record*
Kenneth J. Falk
Gavin M. Rose
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105

Attorneys for Appellant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 4

INTRODUCTION ............................................................................................... 7

SUMMARY OF THE ARGUMENT ....................................................................... 8

ARGUMENT ..................................................................................................... 11

  I.   The statute is unconstitutionally vague in violation of the Fourteenth Amendment ............................................................................................... 11

    A.   The State continues to cite and apply the incorrect legal standard for vagueness challenges .......................................................................... 11

    B.   The statute lacks a discernable core ........................................................ 12

      1.   The State's various attempts to define the key statutory terms instead illustrate the statute's vagueness .................................................... 13

      2.   The fact that the statute could be read to prohibit the teaching of "sex education" does not imbue it with a discernable core ..................................... 15

    C.   The statute invites arbitrary enforcement .................................................. 16

  II.   The statute is impermissibly vague and overbroad in violation of the First Amendment ............................................................................................... 17

    A.   The activities at issue are protected by the First Amendment ................... 17

    B.   The statute is a form of prior restraint that should be evaluated pursuant to, and fails, the standard articulated in *United States v. National Treasury Employees Union* ................................................................................. 22

    C.   Even if this Court were to conclude that *NTEU* does not apply, the statute fails the balancing required by *Pickering* and *Garcetti* ......................... 24

  III.   The remaining preliminary injunction factors are met ........................................... 26

    A.   Ms. Smiley faces a likelihood of irreparable harm for which there is no adequate remedy at law ...................................................................... 26

    B.   The balance of harms and the public interest both favor the issuance of an injunction ...................................................................................... 27

CONCLUSION ........................................................................................................ 27

CERTIFICATE OF COMPLIANCE ................................................................... 29

CERTIFICATE OF SERVICE ............................................................................ 29

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Brown v. Chi. Bd. of Educ.*, 824 F.3d 713 (7th Cir. 2016) .............................................. 21

*Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023)................................................................... 25

*Celis v. Williams*, 2017 WL 1074917 (S.D. Tex. Mar. 21, 2017) ................................... 12

*Christian Legal Soc'y v. Walker*, 453 F.3d 853 (7th Cir. 2006) ..................................... 26

*Connick v. Myers*, 461 U.S. 138 (1983) ........................................................................... 24

*Dubin v. United States*, -- U.S. --, 2023 WL 3872518 (June 8, 2023)............................ 16

*Elrod v. Burns*, 427 U.S. 347 (1976)................................................................................ 26

*Fairley v. Andrews*, 578 F.3d 518 (7th Cir. 2009).......................................................... 22

*Fine Foods, Inc. v. U.S. Dep't of Agric.*, 274 F.3d 1137 (7th Cir. 2001) ....................... 26

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ...................................................................... 24

*Hegwood v. City of Eau Claire*, 676 F.3d 600 (7th Cir. 2012)........................................... 8

*Ind. Dep't of Envmtl. Mgmt. v. Raybestos Prods. Co.*, 897 N.E.2d 469 (Ind. 2008) ... 18

*Johnson v. United States*, 576 U.S. 591 (2015).................................................. 8, 11, 12, 15

*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022) .......................................... passim

*Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477 (7th Cir. 2007) ..................... 21

*McCarthy v. Fuller*, 810 F.3d 456 (7th Cir. 2015) .......................................................... 22

*Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834 (7th Cir. 2011)................. 25

*Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566 (6th Cir. 2002)..... 26

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563 (1968) .......................................................................................................................................... 24

*Planned Parenthood of Ind. & Ky., Inc. v. Marion Cnty. Prosecutor*, 7 F.4th 594 (7th Cir. 2021) ....................................................................................................................... 12

*Sessions v. Dimaya*, 584 U.S. --, 138 S. Ct. 1204 (2018) .................................................. 12

*Shirey v. Flenar*, 89 N.E.3d 1102 (Ind. Ct. App. 2017) .................................................. 18

*Snyder v. Phelps*, 562 U.S. 443 (2011) .................................................................................. 24

*Swetlik v. Crawford*, 738 F.3d 818 (7th Cir. 2013) ............................................. 10, 24, 25

*United States v. Caldwell,* 655 Fed. App'x 730 (11th Cir. 2016).................................. 12

*United States v. Dellinger*, 472 F.2d 340 (7th Cir. 1972)................................................. 18

*United States v. Kaun*, 827 F.2d 1144 (7th Cir. 1987) ...................................................... 22

*United States v. Madison*, 337 F. Supp. 3d 1186 (M.D. Fla. Oct. 10, 2018) ............... 12

*United States v. Morales-Lopez*, 2022 WL 2355920 (D. Utah 2022) ............................ 12

*United States v. Nagelvoort*, 856 F.3d 1117 (7th Cir. 2017) ..................................... 8, 11

*United States v. Nat'l Treasury Emps. Union,* 513 U.S. 454 (1995) .................. 9, 22, 23

*United States v. Salerno*, 481 U.S. 739 (1987) ............................................................ 8, 11

*Webster v. New Lenox Sch. Dist. No. 122*, 917 F.2d 1004 (7th Cir. 1990).................... 21

*Wernsing v. Thompson*, 423 F.3d 732 (7th Cir. 2005) ....................................................... 23

## Statutes

Ind. Code § 1-1-1-5(f)............................................................................................................. 18

Ind. Code § 20-30-2-1 ............................................................................................................ 19

Ind. Code § 20-30-2-1 *et seq.*............................................................................................... 19

Ind. Code § 20-30-2-2 ............................................................................................................ 20

Ind. Code § 20-30-3-4 ............................................................................................................ 18

Ind. Code § 20-30-5-4.5 ......................................................................................................... 18

Ind. Code § 20-30-5-7.5 ......................................................................................................... 19

Ind. Code § 4-21.5-3................................................................................................................ 16

Ind. Code §§ 20-30-15-1 to 20-30-15-8.................................................................... 19

Indiana Code § 20-30-17-2.................................................................................... 6

# INTRODUCTION

There is, of course, no disagreement between the parties that Section 2 of House Enrolled Act 1608, codified as Indiana Code § 20-30-17-2 ("the statute"), prohibits Ms. Smiley from providing "instruction" on "human sexuality" to her first through third grade students. But the statute defines neither "instruction" nor "human sexuality," and due to the vagueness of these terms, Ms. Smiley is forced to engage in self-censorship of protected speech in order to avoid placing her licensure in jeopardy.

In the district court, the defendant ("State") argued that there are no vagueness or First Amendment concerns with the statute because it only applies to the formal teaching of sex education in the classroom during class time. Of course, the statute itself does not indicate this, and it is hopelessly vague. But the statute's vagueness is made even plainer by the State's position on appeal: the State now presents a new and significantly broader interpretation, both regarding what constitutes "instruction" and what falls within the ambit of "human sexuality". These ever-expanding interpretations of the statute alone demonstrate that it is fatally vague. The State's other arguments are no more persuasive, and Ms. Smiley is likely to prevail on her claims that the statute's vagueness violates both due process and the First Amendment. As all the other requirements for the grant of a preliminary injunction are met, one should issue without bond.

## SUMMARY OF THE ARGUMENT

1.    "The void for vagueness doctrine rests on the basic due process principle that a law is unconstitutional if its prohibitions are not clearly defined." *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012) (citation omitted). "A statute is unconstitutionally vague if it (1) does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited, or (2) fails to provide explicit standards to prevent arbitrary discriminatory enforcement by those enforcing the statute." *United States v. Nagelvoort*, 856 F.3d 1117, 1130 (7th Cir. 2017) (internal quotation and citation omitted).   The State erroneously cites to *United States v. Salerno*, 481 U.S. 739, 745 (1987), contending that in order to succeed in a vagueness challenge, Ms. Smiley "must establish that no set of circumstances exists under which the Act would be valid."   (Appellee's Br. at 35).   But the Supreme Court has limited the application of *Salerno* in the context of facial vagueness challenges, and the "no set of circumstances" test simply does not apply here.   *See Johnson v. United States*, 576 U.S. 591, 602 (2015).

The statute is impermissibly vague.   First, the statutory terms "instruction" and "human sexuality" lack ascertainable meaning.   The State's shifting positions regarding the meaning of these terms themselves demonstrate the statute's vagueness, and the district court erred in determining that the statute contained a "discernible core" of meaning.   The statute also fails to provide explicit standards to prevent arbitrary or discriminatory enforcement. It provides no standards to constrain the actions of the individual solely charged with enforcing teacher licensure—the Secretary of Education—and the vagueness of the statute renders it

amenable to arbitrary or discriminatory enforcement.

2.     The statute also violates the First Amendment.  Although the district court concluded, and the State on appeal primarily argues, that Ms. Smiley's private speech was not implicated by the statute, this conclusion contradicts the Supreme Court's recent analysis in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022). There, the Supreme Court cautioned that courts should not commit the error of "treating everything teachers and coaches say in the workplace as government speech subject to government control." *Id.* at 530-31.  Certainly Ms. Smiley speaks as a private person in any number of her interactions with students.

Although the State erroneously disputes this point, the statute is a form of prior restraint in that it imposes a prohibition on speech before it occurs.  This is the most disfavored form of speech regulation, and an additional weight is therefore added to the balance in favor of Ms. Smiley's speech.  The State must show that the interests of both the "vast group of present and future employees in a broad range of present and future expression," and of their potential audiences in hearing that expression, "are outweighed by that expression's necessary impact on the actual operation of the Government." *United States v. Nat'l Treasury Employees Union ("NTEU")*, 513 U.S. 454, 468 (1995) (quotation and citation omitted). The State cannot meet this burden, and the statute is unconstitutionally overbroad in violation of the First Amendment.

Even if the prohibition is evaluated without the heightened scrutiny that applies to prior restraints, it nonetheless fails.  Ms. Smiley's interests in her private

speech are "not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (quotation and citation omitted). Ms. Smiley's speech activities do not inhibit her employer's provision of effective and efficient public service, and they are protected. Due to the statute, Ms. Smiley self-censors and chills her speech so that she does not risk running afoul of the statutory prohibitions. The chilling effect is unreasonable, and the statute violates the First Amendment.

3. All of the other requirements for a preliminary injunction are met, and this case should be remanded to the district court with instruction that a preliminary injunction should issue.

**ARGUMENT**

I.   The statute is unconstitutionally vague in violation of the Fourteenth Amendment

"A statute is unconstitutionally vague if it (1) does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited, or (2) fails to provide explicit standards to prevent arbitrary discriminatory enforcement by those enforcing the statute." *Nagelvoort*, 856 F.3d at 1130 (quotation and citation omitted).  For the reasons articulated in Ms. Smiley's opening brief, this statute fails each of these requirements, and the State's arguments to the contrary are unpersuasive.  (*See* Appellant's Br. at 15-24).

   A.   The State continues to cite and apply the incorrect legal standard for vagueness challenges

As it did in the trial court, and citing to *United States v. Salerno*, 481 U.S. 739, 745 (1987), the State contends that in order to succeed in a vagueness challenge, Ms. Smiley "must establish that no set of circumstances exists under which the Act would be valid."  (Appellee's Br. at 16 [quotation omitted]; *see also id.* at 35).  But this argument ignores the Supreme Court's express limitation on *Salerno*.

In a series of cases involving criminal statutes that vaguely described predicate offenses for sentencing enhancements, the Supreme Court clarified that "although statements in some of our opinions could be read to suggest otherwise, our *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson v. United States*, 576 U.S. 591, 602 (2015) (emphasis by the Court); *see also United States v. Davis*, 588 U.S. --, 139 S. Ct. 2319 (2019); *Sessions v. Dimaya*, 584 U.S. --,

138 S. Ct. 1204 (2018). The *Salerno* "no set of circumstances" test simply does not apply in a facial vagueness challenge, and the State's contentions to the contrary are incorrect. *See, e.g., United States v. Caldwell,* 655 Fed. App'x 730, 732 (11th Cir. 2016) (applying *Johnson* and noting that a statute can be vague even if it clearly covers some conduct); *United States v. Morales-Lopez,* 2022 WL 2355920, at *3 (D. Utah 2022), *appeal pending*, No. 22-4074 (10th Cir.) ("*Johnson* clarified that a challenger need not make [the no set of circumstances] showing."); *United States v. Madison*, 337 F. Supp. 3d 1186, 1196 n.7 (M.D. Fla. Oct. 10, 2018) ("Admittedly, the standard for facial challenges has been the source of heated debate in the Supreme Court. But the latest decision appears to bring closure by not requiring a defendant to show 'no set of circumstances' to prevail on a facial vagueness challenge.") (citation omitted); *Celis v. Williams*, 2017 WL 1074917 (S.D. Tex. Mar. 21, 2017), at *6 ("[T]he Supreme Court rejected the *Salerno* test in *Johnson*.").

B.     The statute lacks a discernable core

The question is not whether there is some theoretical conduct that would be covered by the statute's ban against instruction on human sexuality. The question is whether the plain language of the statute provides "a discernable core." *Planned Parenthood of Ind. & Ky., Inc. v. Marion Cnty. Prosecutor*, 7 F.4th 594, 605 (7th Cir. 2021). Or, to put it otherwise, the question is whether the statute is so vague "that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595. It is.

1.     The State's various attempts to define the key statutory terms instead illustrate the statute's vagueness

As Ms. Smiley described at length in her opening brief (Appellant's Br. at 17-24), the statute is doubly infirm, as it layers two undefined and unclear terms—"instruction" and "human sexuality"—on top of one another, resulting in a prohibition that lacks a discernable core.

Everyone agrees that the term "instruction" encompasses Ms. Smiley's speech as she stands in front of her class and delivers a formal lesson plan. (Appellant's Br. at 17; Appellee's Br. at 18). But what about informal interactions with students, whether inside or outside of her classroom? What about books that Ms. Smiley provides for optional reading in her classroom library or conversations stemming from them? What about conversations with her students about how to treat one another with kindness and respect or about their family structures? What about the messages on Ms. Smiley's water bottle or car, or answering students' questions about those?

In the trial court, the State articulated its position that instruction means only "active teaching" to students during class time, and not informal interactions with students outside of the classroom, stickers on a water bottle, or a book in a classroom library when not used as part of a "lesson plan." (District Court Docket ["Dist. Ct. Dkt."] 27 at 10-16). On appeal, however, the State appears to have changed its position about what "instruction" means. The definition it now advocates appears to sweep much more broadly, and is even less clear than its prior conception. (*See* Appellee's Br. at 27-31). The State begins by articulating that "instruction" means

13

"speech that teachers make in connection with their official duties," (Appellee's Br. at 27) or "teaching during instructional time or otherwise in association with a teacher's duties" (*id.* at 28). Elsewhere in its brief, the State suggests that "instruction" means activities "[]related to a formal educational purpose." (*Id.* at 29).

But what does it mean to speak in "connection" or "association" with a teacher's "official duties"? What are the activities that are related to a "formal educational purpose"? None of those descriptions provide further clarity, and indeed they inject even more uncertainty. Whatever those descriptions mean, they doubtless encompass significantly more speech than the State's prior definition of "instruction"—the provision of formal lessons during class time. These expanding definitions illustrate precisely the ills of this vague statute: even if Ms. Smiley could determine the meaning of "human sexuality" in the statute, how could she determine what conduct is prohibited? Even the State cannot arrive at the meaning of "instruction," and this alone provides ample grounds for this Court to find the statute unconstitutionally vague.

The term "human sexuality" is equally vague. The parties agree that the term encompasses sexual activity and sexually transmitted diseases, and the State heavily emphasizes this conception of the term. (Appellee's Br. at 37 [citing dictionary definitions of "sexuality"]). But both in the district court and here, the State has made clear that this term, as it is used in the statute, is not limited to those subjects. According to the State, it also includes a wide variety of other topics, such as gender identity (Dist. Ct. Dkt. 27 at 26-27), "sex organs' significance" (Appellee's Br. at 33),

the expression of sexual interest (*id.* at 37), attitudes relating to sex (*id.*), and "the quality of being sexual, especially sexual orientation" (*id.*). Given this proposed definitional scope, the State simply did not and cannot explain how a reasonable educator, confronted with young inquisitive children who will ask numerous questions about relationships and human development, is supposed to determine what this term prohibits. It seemingly includes discussion of gay rights, transgender youth, "non-traditional" families, anatomical function, or even a girl wanting to kiss a boy. A reasonable educator like Ms. Smiley simply cannot discern what speech this statute prohibits and what may subject her to licensing consequences.

2. The fact that the statute could be read to prohibit the teaching of "sex education" does not imbue it with a discernable core

The State contends that the statute should be read to prohibit the formal teaching of sex education to students in kindergarten through third grade, and if read that way, it contains a discernable core, thus disposing of the vagueness challenge. (Appellee's Br. at 38-39). This argument fails for at least two reasons. First, as the Supreme Court has made clear, the fact that there is "some conduct that clearly falls within the provision's grasp," does not itself constitute a discernable core. *Johnson*, 576 U.S. at 602. But in any event, "sex education" is simply not taught to the young children covered by the statute. (Dist. Ct. Dkt. 26-1 at 13). Given the common-sense nature of the "discernable core" inquiry, that "core" of meaning certainly cannot be something unlikely to ever take place. So giving "instruction" on "human sexuality" must mean more than teaching sex education in the classroom, and indeed, the State has indicated here that it does. But what? It simply is not clear.

C.    The statute invites arbitrary enforcement

Because the statute lacks a discernable core, and is subject to any number of interpretations, it invites arbitrary enforcement. This is particularly pronounced here, as the Secretary of Education has sole enforcement authority, and no regulations have been promulgated to guide or cabin her enforcement decisions. When a proscription is subject to multiple permissible interpretations, it invites arbitrary enforcement. "We have a term for laws like th[is]. We call them vague. And '[i]n our constitutional order a vague law is no law at all.'" *Dubin v. United States*, 599 U.S. 110, 133 (2023) (Gorsuch, J., concurring) (quoting *Davis,* 139 S. Ct. at 2323).

The State has several responses regarding the risk of arbitrary enforcement. First, it points out that licensing actions may only be imposed if a teacher's conduct "rise[s] to the level" of the infractions identified in the licensing statute: "(1) immorality; (2) misconduct in office; (3) incompetency; or (4) willful neglect of duty." (Appellee's Br. at 40). It is unclear what the State hopes to gain by this, as violation of a state law could surely be expected to fall within at least one of these infractions, such as "misconduct in office."

Next the State suggests that, if a licensing action were brought, a teacher would "have full enjoyment of the protections of Indiana's Administrative Orders and Procedures Act." (Appellee's Br. at 40). But this does nothing to substantively cabin the circumstances under which a teacher could be subjected to a licensing action; it merely imposes procedural requirements governing how a licensing action, as in any other administrative action, is to be adjudicated. *See* Ind. Code § 4-21.5-3. And finally, the State contends, teachers "could ask the Department of Education or their

16

school principals for clarification about how 1608 applies at the outset." (Appellee's Br. at 40). But, as already indicated, the Department of Education has not provided any regulatory guidance regarding the statute. And any individual school principal's opinion regarding the meaning of a state statute is entitled to precisely no weight. And this suggestion by the State profoundly misunderstands how these issues are likely to arise, which would rarely allow for pre-clearance of any proposed speech.

The statue is impermissibly vague in violation of the Fourteenth Amendment.

II.    The statute is impermissibly vague and overbroad in violation of the First Amendment

    A.    The activities at issue are protected by the First Amendment

To be clear, this is not a question of Ms. Smiley's during-lesson speech. It is about a wide array of speech that she engages in on a daily basis: the library that she provides in her classroom and that students are encouraged to visit daily, the informal conversations she has with students about how to treat one another or about their family structures, the messages conveyed by the stickers on her water bottle and her car, and the myriad informal conversations that she has with students to answer their questions. The speech implicated is wide-ranging and substantial, and the State's efforts to insist on a cabined universe of speech is no more persuasive in the First Amendment context than the Fourteenth Amendment one.

The State's argument in opposition to Ms. Smiley's First Amendment claims, relying on canons of statutory interpretation and the Supreme Court's recent decision in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), is simple: even assuming some degree of vagueness, Ms. Smiley's First Amendment rights have not

been violated because the speech at issue is her employer's, and not hers. (Appellee's Br. at 17-22). The State is incorrect.

The State's appeals to canons of statutory interpretation fall flat. Given the concern that an ill-defined statute impacting expressive activity will have a "chilling" effect on potential speakers, "in a first amendment case the range of construction to avoid overbreadth is significantly narrowed." *United States v. Dellinger*, 472 F.2d 340, 356 (7th Cir. 1972).

The State first seeks meaning in the provision's statutory placement, pointing out that it appears within Article 30 of the educational code, entitled "Curriculum." (Appellee's Br. at 29). Therefore, argues the State, "instruction" must simply refer to "the duties of teachers in carrying out the prescribed curriculum." (*Id.*). But appeal to this title is flawed for two reasons. First, Indiana law is clear that "[t]he headings of titles, articles, and chapters as they appear in the Indiana Code . . . are not part of the law" and "are not intended to affect the meaning, application, or construction of the statute they precede." Ind. Code § 1-1-1-5(f); *see also Ind. Dep't of Envmtl. Mgmt. v. Raybestos Prods. Co.*, 897 N.E.2d 469, 475 (Ind. 2008); *Shirey v. Flenar*, 89 N.E.3d 1102, 1106 n.1 (Ind. Ct. App. 2017). And second, a review of that Article quickly demonstrates that no such limitation could be inferred even if Indiana's rules of statutory construction allowed it: the Article includes any number of provisions unrelated to prescribed lessons or courses of study, governing things such as the display of the United States flag, Ind. Code § 20-30-3-4; the observance of a daily "moment of silence," Ind. Code § 20-30-5-4.5; the provision of recess, Ind. Code § 20-

30-5-7.5; and extracurricular activities and employment, Ind. Code §§ 20-30-15-1 to 20-30-15-8. Given this, the State's proposed limitation simply cannot be gleaned from the provision's placement.

The State's other primary argument, referring to the statutory provision defining "instructional time," fares no better. (Appellee's Br. at 29 [citing Ind. Code § 20-30-2-1 *et seq.*]). Because this provision excludes lunch and recess from "instructional time," the State appends to the statutory language the conclusion that "instruction" must therefore include only those activities that "[relate] to a formal educational purpose." (Appellee's Br. at 29). But this interpretation cannot be adopted. For starters, it inserts statutory language that simply does not follow from the text. Although the statute indicates that passing periods are not excluded from instructional time, *see* Ind. Code § 20-30-2-1, no "formal educational purpose" attends a passing period any more than it does recess or lunch, and the statute says nothing about why lunch and recess are excluded from instructional time.[1]

In any event, this provision provides no help to the State from a First Amendment perspective: it only suggests that Ms. Smiley's display of her water bottle, her classroom library, and her interactions with students between classes all take place during "instructional time," while the same activities with students during lunchtime or recess do not. Regardless, "instructional time" is defined by Indiana law

---

[1] Moreover, the State's prior position regarding the provision's placement within Article 30—"Curriculum"—is entirely inconsistent with the "formal educational purpose" interpretation it simultaneously advocates. The education code's only other reference to recess is in Article 30, which according to the State, concerns itself with formal educational activities. *See* Ind. Code § 20-30-5-7.5.

to serve a very specific purpose: to delineate the required length of the school day. *See* Ind. Code § 20-30-2-2. It makes no sense to apply this definition outside of the context for which it was designed.

The State's other substantive argument is to reject the import of the Supreme Court's recent decision in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022). Instead, the State articulates a standard for determining what constitutes employer speech that sweeps much more broadly than Supreme Court precedent supports, and would lead to absurd results. Indeed, the State does not appear to concede that *any* of the speech described by Ms. Smiley is her own private speech, including the stickers on her water bottle or her car. The State articulates what amounts to a "but-for" test of employee speech: but-for the teacher's employee status, could or would the speech occur? The State's answer, as to all of Ms. Smiley's speech, is "no."

If the State were correct in the standard it articulates for what constitutes employee speech, *Kennedy* was wrongly decided. Of course, a football coach only has access to the 50-yard line immediately following a game *because of his official duties as a coach*. Accepting the State's formulation means concluding that if Ms. Smiley placed a sticker on her water bottle that carried a religious message, or answered a student's question regarding it, this would be the speech of her employer. *Kennedy* confirms that this cannot be the case. Ms. Smiley is "not seeking to convey a government-created message," *Kennedy,* 597 U.S. at 529, and just like the Supreme Court's hypothesized teacher wearing a headscarf, or *Kennedy*'s football coach, Ms. Smiley privately speaks within the school setting.

The State also suggests that, as a primary public-school teacher, Ms. Smiley has, full stop, "hired out" her speech to her employer. (Appellee's Br. at 17 [citing *Mayer v. Monroe Cty. Cmty. Sch. Corp.,* 474 F.3d 477, 479 (7th Cir. 2007)]). Of course, unlike here, *Mayer* solely involved speech made by a teacher as part of a prescribed social studies curriculum, during a lesson. *Mayer,* 474 F.3d at 478.[2] But in *Kennedy*, the Supreme Court concluded that the coach's speech was not "hired out," despite taking place during his on-the-clock duties, as "he was not seeking to convey a government-created message" and because he did so during a time when he would have been free to do any number of other things, such as socialize. *Kennedy*, 597 U.S. at 529-530.

In arguing that the statute "does not reach as far as [Ms.] Smiley alleges," the State attempts to walk an impossible tightrope. It argues, on the one hand, *supra* at 13-14, that much of what Ms. Smiley worries about is not "instruction," but on the other hand, that nearly everything she does is pursuant to her "official duties" and therefore constitutes her employer's speech. The State simply cannot have it both ways, and again, this malleability underscores the vagueness that infects the statute.

Ms. Smiley does, consistently with the First Amendment, engage in private speech during the course of her days in and out of school.

---

[2]  All of the relevant cases cited by the State involve teacher speech during prescribed lessons. (Appellee's Br. at 20-21 [additionally citing *Webster v. New Lenox Sch. Dist. No. 122*, 917 F.2d 1004 (7th Cir. 1990), *Brown v. Chi. Bd. of Educ.,* 824 F.3d 713 (7th Cir. 2016)).

B.   The statute is a form of prior restraint that should be evaluated pursuant to, and fails, the standard articulated in *United States v. National Treasury Employees Union*

As Ms. Smiley described in her opening brief, this statute constitutes a prior restraint on the speech of government employees, and therefore should be evaluated under the standard articulated in *United States v. National Treasury Employees Union (NTEU),* 513 U.S. 454, 461-62 (1995). The State contends that because Ms. Smiley is concerned about losing her license or job if she were to engage in prohibited speech, a future penalty, "[t]his is not a prior restraint scenario." (Appellee's Br. at 32). The State errs and appears to fundamentally misunderstand the nature of a prior restraint.

A prior restraint is a restriction on speech that prohibits it before it occurs, rather than simply punishing it afterward. *See, e.g., United States v. Kaun*, 827 F.2d 1144, 1150 (7th Cir. 1987) ("Governmental action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated."). Or, in the words of Judge Posner "[p]rior restraint is just a fancy term for censorship, which means prohibiting speech before the speech is uttered or otherwise disseminated." *McCarthy v. Fuller*, 810 F.3d 456, 461 (7th Cir. 2015). The fact that punishment is threatened for violation of any such prohibition, such as employment consequences (in the context of challenged employment-related restrictions), contempt (in the context of violating a court order), or loss of licensure (in the context of regulatory regimes), does not render the prohibition *post hoc*. *See Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) ("Threatening penalties for

future speech goes by the name 'prior restraint,' and a prior restraint is the quintessential first-amendment violation.").  Of course, this includes restrictions on employee speech, which often, as here, apply to large numbers of people on a variety of issues.  *See, e.g., Wernsing v. Thompson*, 423 F.3d 732, 743-44 (7th Cir. 2005) (citing *NTEU,* 513 U.S. at 461-62 and collecting other cases).  There can be little doubt that this statute—prohibiting the speech of government employees before it occurs—is a prior restraint.

In this prior-restraint context, the statute is subjected to a form of heightened scrutiny.  The State must show that the interests of both the "vast group of present and future employees in a broad range of present and future expression," and of their potential audiences in hearing that expression, "are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *NTEU,* 513 U.S. at 468 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571 (1968)).

The State offers no such impact, instead pointing only to a generalized interest in making sure "schoolchildren receive age-appropriate education."  (Appellee's Br. at 33).  Weighed against the licensing consequences that loom for Ms. Smiley and all other school employees, this proffered interest falls dramatically short.  Ms. Smiley is not engaging in expression that is antithetical to or disruptive of the educational mission of her employer, and the State has not contended otherwise.  Therefore, her speech cannot be suppressed or chilled.

C.  Even if this Court were to conclude that *NTEU* does not apply, the statute fails the balancing required by *Pickering* and *Garcetti*

If the statute were not subject to the heightened *NTEU* standard, it would be subject to the balancing analysis established in *Garcetti v. Ceballos*, 547 U.S. 410, 418-20 (2006), and *Pickering v. Board of Education of Township High School District 205, Will County*, 391 U.S. 563, 568-73 (1968).  It fails that balancing as well.

When an employee speaks as a citizen addressing a matter of public concern, the Supreme Court has indicated that a court's next step ordinarily should be balancing the "competing interests surrounding the speech and its consequences." *Kennedy*, 597 U.S. at 527.  That speech is subject to First Amendment protection (1) if it addresses a matter of public concern; and (2) if the employee's interest in "expressing that speech [is] not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (quotation and citation omitted).

In passing, the State appears to suggest that if Ms. Smiley's audience is comprised of students, her speech cannot be of public concern.  (Appellee's Br. at 32-33).  But that assertion finds no support in case law.  "Speech is of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'"  *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). There can be little doubt that the speech at issue addresses matters of public concern: family relationships and LGBTQ rights, for example, certainly command the public's interest and attention.

Ms. Smiley has no choice but to chill her speech, and steer far clear of the bounds of prohibited speech, to avoid potentially running afoul of the prohibition. Just like this Court's recent pronouncement on a Wisconsin criminal statute purporting to prohibit individuals from maintaining "physical proximity" to hunters, this statute "creates an unacceptable risk" that Ms. Smiley will "refrain from exercising [her] rights for fear of [licensing] sanctions." *Brown v. Kemp*, 86 F.4th 745, 776-77 (7th Cir. 2023). A law's "chilling effect is particularly great when it is unclear whether the law actually forbids the contemplated activity," and that is certainly the case here. *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 847 (7th Cir. 2011) (citation omitted).

The State does not dispute that Ms. Smiley will change her expressive actions to avoid running afoul of the statutory prohibition and risk losing her teaching license. She will not carry her water bottle, which is essentially a billboard expressing her personal views. She may have to forego replacing her expressive bumper stickers on her new car. She will alter the way that she deals with and relates to students both during the school day and after. This represents a significant burden on a substantial amount of Ms. Smiley's speech and potential speech.

Again, the State points only to a generalized interest in making sure "schoolchildren receive age-appropriate education." (Appellee's Br. at 33). Nothing about Ms. Smiley's speech negatively impacts the "state's interests as an employer in promoting effective and efficient public service." *Swetlik*, 738 F.3d at 825 (quotation

and citation omitted). Ms. Smiley is therefore likely to succeed in showing that the statute substantially impairs her First Amendment rights and is unconstitutional.

III. **The remaining preliminary injunction factors are met**

  A. **Ms. Smiley faces a likelihood of irreparable harm for which there is no adequate remedy at law**

Ms. Smiley's First Amendment and due process rights are being threatened. "[T]he loss of First Amendment freedoms, even for minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). More generally, "[c]ourts have . . . held that a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). This Court has stressed that the "[t]he loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). The State provides no response as to these harms or this case law.

Instead, the State merely contends that licensing actions are rare, and therefore that there is "[n]o imminent threat to [Ms. Smiley's] license or job" that would justify the issuance of an injunction. (Appellee's Br. at 40-41). But the State can hardly rely on the commonality of licensing actions in the face of a brand new statute that focuses on one of the "hot-button" issues of the day. Ms. Smiley is faced with discipline or the loss of her license and the ability to do the job she loves if she violates the vague and uncertain terms of the statute. This is irreparable harm. *See,*

*e.g., Fine Foods, Inc. v. U.S. Dep't of Agric.*, 274 F.3d 1137, 1139-40 (7th Cir. 2001) (loss of a license that would put plaintiff out of business is irreparable harm).

> B. The balance of harms and the public interest both favor the issuance of an injunction

Granting a preliminary injunction will avoid a threat to constitutional rights and will not burden the State. *Christian Legal Soc'y*, 453 F.3d at 867. And "injunctions protecting First Amendment freedoms are always in the public interest." *Id.* at 859 (citation omitted). The State's only argument concerning these two factors is that the statute is the result of the legislature's considered action and, as noted, that it desires to "protect young students from exposure to potentially inappropriate instruction from teachers on sex and sexuality." (Appellee's Br. at 41-42). But, of course, the Indiana legislature may go only so far as the United States Constitution allows, and Ms. Smiley is likely to succeed in showing that it has exceeded those bounds here. No burden to the State will result from an injunction requiring it to comply with constitutional norms.

## CONCLUSION

The district court's decision denying a preliminary injunction in this case should be reversed. A preliminary injunction should be entered enjoining the enforcement of HEA 1608 against Ms. Smiley.

Stevie J. Pactor
Counsel of Record
Kenneth J. Falk
Gavin M. Rose
ACLU of Indiana

1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
spactor@aclu-in.org
kfalk@aclu-in.org
grose@aclu-in.org


Attorneys for Appellant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief conforms to Circuit Rule 32.

1.      This brief complies with the type-volume limitations set forth in Circuit Rule 32(c) because it contains 6,535 words based on the "Word Count" feature of Microsoft Word.

2.      This brief complies with the typeface and type style requirements set forth in Circuit Rule 32 because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook font for the body of the brief and 11-point font for footnotes.

/s/ *Stevie J. Pactor*
Stevie J. Pactor
Attorney at Law

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of January, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Service will be made on all ECF-registered counsel by operation of the Court's electronic system.

/s/ *Stevie J. Pactor*
Stevie J. Pactor
Attorney at Law
